IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF OREGON

CANDY G.,[1]

          Plaintiff,                                     Civ. No. 3:23-cv-0007-MC

     v.                                         OPINION AND ORDER

COMMISSIONER, SOCIAL SECURITY
ADMINISTRATION,

          Defendant.

_____

MCSHANE, Judge:

Plaintiff brings this action for judicial review of the Commissioner's decision denying her application for disability insurance benefits and supplemental security income. This Court has jurisdiction under 42 U.S.C. §§ 405(g) and 1383(c)(3).

Plaintiff alleges disability beginning April 30, 2018, due to fibromyalgia, anxiety, depression, and autoimmune disease. Tr. 306.[2] Plaintiff filed an application for benefits on November 6, 2019. Tr. 13. Her application was denied initially and upon reconsideration. After a hearing on November 19, 2021, the Administrative Law Judge (ALJ) determined Plaintiff was not disabled under the Social Security Act. Tr. 27. Plaintiff's request for Appeals Council review of the ALJ's decision was denied in November 2022. Tr. 1.

---

[1] In the interest of privacy, this opinion uses only the first name and the initial of the last name of the non-governmental party in this case.
[2] "Tr" refers to the Transcript of Social Security Administrative Record provided by the Commissioner.

The ALJ found the Plaintiff had the following severe Medically Determinable Impairments (MDIs): migraines, fibromyalgia, systemic lupus erythematosus, mild neurocognitive disorder, somatic symptom disorder, borderline intellectual functioning, posttraumatic stress disorder, depression, and anxiety. Tr. 15. The ALJ then determined Plaintiff does not have an impairment or combination of impairments that meets or medically equals the severity of a listed impairment. Tr. 16. The ALJ found Plaintiff could perform light work but must avoid concentrated exposure to hazards such as heights and dangerous machinery; can understand, remember, carry out and persist at simple, routine tasks; can make simple work-related decisions; perform work with few if any changes in the workplace; and no assembly line pace work. Tr. 19. The ALJ limited Plaintiff to no more than occasional contact with coworkers and no public contact. *Id*. The ALJ discounted Plaintiff's subjective symptom testimony regarding intensity, persistence and limiting effects as being not entirely consistent with the record. Tr. 21. Finally, the ALJ determined there were jobs that exist in significant numbers in the national economy that Plaintiff can perform. Tr. 26.

Plaintiff argues the ALJ erred by (1) improperly rejecting subjective symptom testimony regarding migraines, (2) formulating an RFC without considering limitations of Plaintiff's migraines, (3) failing to follow RFC guidance under SSRs 19-4 and 96-8p, (4) failing to evaluate whether Plaintiff's migraines are equivalent to Listing 11.02B, and (5) relying on erroneous VE testimony. Because the Commissioner's decision is based on proper legal standards and supported by substantial evidence, the Commissioner's decision is AFFIRMED.

## **STANDARD OF REVIEW**

The reviewing court shall affirm the Commissioner's decision if the decision is based on proper legal standards and the legal findings are supported by substantial evidence in the record.

42 U.S.C. § 405(g); *Batson v. Comm'r of Soc. Sec. Admin.*, 359 F.3d 1190, 1193 (9th Cir.

2004). "Substantial evidence is 'more than a mere scintilla but less than a preponderance; it is

such relevant evidence as a reasonable mind might accept as adequate to support a conclusion.'"

*Hill v. Astrue*, 698 F.3d 1153, 1159 (9th Cir. 2012) (quoting *Sandgathe v. Chater*, 108 F.3d 978,

980 (9th Cir. 1997)). "Under the substantial-evidence standard, a court looks to an existing

administrative record and asks whether it contains sufficient evidence to support the agency's

factual determinations." *Biestek v. Berryhill*, 139 S.Ct. 1148, 1154 (2019) (citation and internal

quotation marks omitted).  "[T]he threshold for such evidentiary sufficiency is not high."  *Id.*

 "If the evidence can reasonably support either affirming or reversing, 'the reviewing court may

not substitute its judgment' for that of the Commissioner." *Gutierrez v. Comm'r of Soc. Sec.

Admin.*, 740 F.3d 519, 523 (9th Cir. 2014) (quoting *Reddick v. Chater*, 157 F.3d 715, 720-21

(9th Cir. 1996)).

## **DISCUSSION**

The Social Security Administration utilizes a five-step sequential evaluation to

determine whether a claimant is disabled. 20 C.F.R. §§ 404.1520 & 416.920 (2012). The initial

burden of proof rests upon the claimant to meet the first four steps. If the claimant satisfies his

burden with respect to the first four steps, the burden shifts to the Commissioner for step five.

20 C.F.R. § 404.1520. At step five, the Commissioner must show that the claimant is capable of

making an adjustment to other work after considering the claimant's residual functional

capacity (RFC), age, education, and work experience. *Id*. If the Commissioner fails to meet this

burden, then the claimant is disabled. 20 C.F.R. §§ 404.1520(a)(4)(v); 416.920(a)(4)(v). If,

however, the Commissioner proves that the claimant is able to perform other work existing in

significant numbers in the national economy, the claimant is not disabled. *Bustamante v. Massanari*, 262 F.3d 949, 953-54 (9th Cir. 2001).

I.

Plaintiff challenges the ALJ discounting her subjective testimony as to the frequency and severity of her migraine symptoms. At the hearing, Plaintiff testified that she has had migraines since she was a teenager. Tr. 49. Plaintiff testified that worsening migraine symptoms caused her to miss work in the past, resulting in her former employers becoming "a little less patient with her." Tr. 57. Plaintiff testified that she stopped working in March of 2018.[3] Tr. 44. Plaintiff testified that she experiences "about seven [migraines] a month, but the three or four are the ones that are where I'll literally be in bed for two or three days to the point of throwing up." Tr. 49. Plaintiff testified that she has an Associate's degree, can drive herself to appointments, and grocery shop. Tr. 40, 47. Plaintiff further testified that her most disabling conditions were her fibromyalgia and PTSD. Tr. 50.

When a claimant has MDIs that could reasonably be expected to produce some degree of the symptoms complained of, and the record contains no affirmative evidence of malingering, "the ALJ can reject the claimant's testimony about the severity of ... symptoms only by offering specific, clear and convincing reasons for doing so." *Smolen v. Chater*, 80 F.3d 1273, 1281 (9th Cir. 1996) (internal citation omitted). A general assertion the claimant is not credible is insufficient; the ALJ must "state which ... testimony is not credible and what evidence suggests the complaints are not credible." *Dodrill v. Shalala*, 12 F.3d 915, 918 (9th Cir. 1993). The reasons proffered must be "sufficiently specific to permit the reviewing court to conclude that

---

[3] Plaintiff stopped working prior to her last date of employment. Her last date of employment, April 30, 2018, coincides with her alleged onset date.

the ALJ did not arbitrarily discredit the claimant's testimony." *Orteza v. Shalala*, 50 F.3d 748, 750 (9th Cir. 1995) (internal citation omitted). In other words, the "clear and convincing" standard requires an ALJ to "show [their] work." *Smartt v. Kijakazi*, 53 F.4th 489, 499 (9th Cir. 2022).

The ALJ did not outright reject Plaintiff's symptom testimony, but instead determined Plaintiff's statements regarding the "intensity, persistence and limiting effects of these symptoms are not entirely consistent with the medical evidence and other evidence in the record." Tr. 21. First, the ALJ cites multiple examples within the record showing that Botox therapy in combination with abortive medication therapy effectively reduced Plaintiff's migraine intensity and frequency, including medical records from both Plaintiff's primary care physician and neurologist. Tr. 22. An ALJ may consider the effectiveness of treatment when evaluating a claimant's symptom testimony. 20 C.F.R. §§ 404.1529(c)(3)(iv)-(v), 416.929(c)(3)(iv)-(v). Additionally, in contrast with Plaintiff's claims that her symptoms are debilitating, causing her to be in bed for days at a time, the ALJ points to statements in Plaintiff's medical records that Botox therapy continues to help "when active." Tr. 22. The ALJ pointed out that Plaintiff had been able to ride her horses up until July 2020, well past the alleged onset date of debilitating migraines. *Id*. The ALJ points to CT scans taken shortly after a horseback riding accident being clear, despite complaints of confusion, memory loss, and that nerve conduction and EMG studies of her legs were all normal. *Id*. Finally, the ALJ concludes that there is no "evidence of neurological abnormalities, focal deficits, or diagnostic imaging of acute intracranial disease such that her migraines would preclude her from performing all work related activity." *Id*.

The ALJ also relied on Plaintiff's testimony that she worked while experiencing migraines in the past when discounting the severity of Plaintiff's migraine symptoms. Tr. 24; 47. "[S]ubstantial evidence indicating Plaintiff's condition remained constant for a number of years and had not prevented her from working over that time supports a finding of not disabled." *Gregory v. Bowen*, 844 F.2d 664, 667 (9th Cir. 1988). In this case, there is no evidence Plaintiff experienced worsening migraine symptoms prior to leaving employment. *See* Tr. 739-753; 754-925. As the ALJ notes, Plaintiff's medical records show no increased frequency or intensity of migraines until November 2019, nineteen months after her alleged onset date. Tr. 24; 979. Indeed, at the date of alleged disability, there is no evidence that migraines would have precluded Plaintiff from "performing light exertion simple work tasks with the postural and environmental limitations set forth in the RFC." Tr. 24.

The ALJ was not persuaded that Plaintiff's disabling migraine symptoms stopped her from working when she moved to another state. Tr. 24. There is enough inconsistency in the record to warrant skepticism as to whether migraines contributed to Plaintiff's leaving employment. For example, Plaintiff first testified that she stopped working because she was not recovering from hernia repair surgery. Tr. 43-44. Plaintiff later testified that her migraines became more intolerable, causing her former employers to "get a little less patient with [her]." Tr. 57. Now, Plaintiff argues increased migraines were "one of the reasons her work ceased." Pl. Br. at 6. Finally, Plaintiff stated during a consultative examination that her employment ended when she "quit and moved to Oregon." Tr. 1385. In cases where conflicting evidence is presented, the ALJ is the trier of fact. *Matney v. Sullivan*, 981 F.2d 1016, 1019 (9th Cir. 1992). Ultimately, "the trier of fact and not the reviewing court must resolve conflicts in the evidence, and if the evidence could support either outcome, the court may not substitute its judgment for

that of the ALJ." *Id*. The ALJ properly considered the conflicting evidence and determined Plaintiff's explanation for the circumstances under which she moved and her alleging disability to be unpersuasive.

In sum, The ALJ did not err in discounting Plaintiff's testimony regarding the severity of her migraine symptoms because the ALJ provided "specific, clear and convincing reasons" for doing so, as required by Ninth Circuit law. *Vasquez v. Astrue*, 572 F.3d 586, 591 (9th Cir. 2009) (quoting *Smolen v. Chater*, 80 F.3d 1273,1282 (9th Cir. 1996)). Although Plaintiff argues another interpretation of the record is reasonable, that is not a legitimate reason for overturning the ALJ's conclusions. *See Gutierrez v. Comm'r of Soc. Sec. Admin.*, 740 F.3d 519, 523 (9th Cir. 2014) ("If the evidence can reasonably support either affirming or reversing, 'the reviewing court may not substitute its judgment' for that of the Commissioner.") (quoting *Reddick v. Chater*, 157 F.3d 715, 720-21 (9th Cir. 1996))).

## II.

Plaintiff argues the ALJ erred in formulating the RFC by "ignoring findings made by agency physician, Thomas Davenport, M.D., who rendered his opinion of Plaintiff's migraine impairment in the initial determination." Pl. Br. at 8. Plaintiff argues the ALJ improperly disregarded Dr. Davenport's conclusion that her migraine symptoms include sensitivity to noise, light, and smells, in contrast with SSR 19-4 guidance. Pl. Br. at 8-9. Plaintiff also argues the ALJ erred by failing to indicate which limitations were caused by migraines, and how the evidence supported her findings as required by SSR 96-8p. Pl. Br. at 10.

The RFC "is the most you can do despite your limitations." 20 C.F.R. §§ 404.1545(a)(1), 416.945(a)(1). Specifically, it is the most claimants can do "on a regular and continuing basis" despite functional limitations arising from their impairment(s). *Id.*; *see also*

SSR 96-8p, 1996 WL 374184, at *2. The RFC must contemplate the "total limiting effects" of all MDIs, both "severe" and "non-severe," including the effect of pain.  20 C.F.R. §§ 404.1545(e), 416.945(e).

The proper inquiry under SSR 19-4 is not whether the ALJ evaluated every alleged symptom, but whether the ALJ considered "the extent to which the person's impairment-related symptoms are consistent with the evidence in the record." SSR 19-4. In cases where migraine and migraine symptoms are alleged, "[c]onsistency and supportability between reported symptoms and objective medical evidence is key in assessing the RFC." *Id*. SSR 96-8p states the RFC assessment must be based on all relevant evidence. The ALJ must "describe how evidence supports each conclusion, citing specific medical facts (e.g., laboratory findings) and nonmedical evidence (e.g., daily activities, observations)." SSR 96-8p.

The ALJ applied the proper legal standard when formulating the RFC. *See Bayliss v. Barnhart*, 427 F.3d 1211, 1217 (9th Cir. 2005) ("We will affirm the ALJ's [RFC] determination . . . if the ALJ applied the proper legal standard"). The ALJ prepared an RFC considering all limitations for which there was support in the record, and that did not depend on Plaintiff's subjective symptoms, which were discounted. *See* Tr. 19-25; *Bayliss*, 427 F.3d at 1217. Contrary to Plaintiff's assertion, the ALJ is not required to provide a function-by-function analysis of subjective symptoms not supported by the record. *Bayliss*, 427 F.3d at 1217. The ALJ considered all medical opinions and prior administrative findings, including the opinions of State examiners who concluded Plaintiff had severe migraines but was capable of "light work." Tr. 72-73; Tr. 99-103. The ALJ then formulated the RFC in accordance with those findings and considering the record as a whole. Tr. 25.

III.

8

Plaintiff argues the ALJ erred by failing to properly evaluate whether her migraine disorder equals Listing 11.02B, which requires "[d]yscognitive seizures occurring at least once a week for three consecutive months, despite adherence to prescribed treatment." Plaintiff alleges she meets 11.08B criteria because "she has suffered one migraine a week for years while adhering to prescribed treatment." Pl. Br. at 11.

To equal a medical listing, an MDI must meet all of the criteria of the medical listing. 20 C.F.R. §§ 404.1526, 416.926. A determination of medical equivalence must rest on objective medical evidence. *Lewis v. Apfel*, 236 F.3d 503, 514 (9th Cir. 2001); *see also* SSR 17-2p, 2017 WL 3928306, at *3 (effective March 27, 2017). Specifically, "[m]edical equivalence must be based on medical findings" and "[a] generalized assertion of functional problems is not enough to establish disability at step three." *Tackett v. Apfel*, 180 F.3d 1094, 1100 (9th Cir. 1999) (citation and internal quotations omitted).

Plaintiff relies on her testimony as to the frequency of the headaches, as well as her subjective reports to her doctors as evidence that she meets Listing 11.02B. However, determining if primary headache disorder equals 11.02B requires more than subjective descriptions of the frequency and severity of the headaches. SSR 19-4. SSR 19-4 provides guidance for finding whether primary headache disorder meets 11.02B criteria, including:

> a detailed description from an AMS of a typical headache event, including all associated phenomena (for example, premonitory symptoms, aura, duration, intensity, and accompanying symptoms); the frequency of headache events; adherence to prescribed treatment; side effects of treatment (for example, many medications used for treating a primary headache disorder can produce drowsiness, confusion, or inattention); and limitations in functioning that may be associated with the primary headache disorder or effects of its treatment, such as interference with activity during the day for example, the need for a darkened and quiet room, having to lie down without moving, a sleep disturbance that affects daytime activities, or other related needs and limitations).

SSR 19-4p.

9

The burden of proof rests on the Plaintiff at this step, and in this case, Plaintiff presented no objective medical evidence that her symptoms met 11.02B. Throughout Plaintiff's voluminous records, there is no evidence from any treating physician as to the symptoms of a typical headache event with associated phenomenon.  In fact, Plaintiff's contention that she meets 11.02B rests squarely on the reliability of her subjective symptom testimony, which the ALJ discounted. *See section I, supra*. Therefore, because Plaintiff did not provide objective medical evidence to support meeting Listing 11.02B, the ALJ properly found she did not.

IV.

Plaintiff argues the mental RFC does not address her limitation in following detailed instructions because the RFC only refers to her ability to perform "simple tasks." Pl. Br. at 12-13. Plaintiff relies on state examiner Dr. Kaper's report stating "[Plaintiff] is capable of understanding/remembering simple instructions" but is "moderately limited" in her ability to carry out detailed instructions. Tr. 117. Plaintiff argues that failing to incorporate a limitation to 'simple instructions' into the RFC resulted in an unsuitable job determination at step five of the evaluation. *Id*. at 15. Plaintiff argues that if the limitation to 'simple instructions' were included in the RFC, Plaintiff would be restricted to jobs at Reasoning Level One in the Dictionary of Occupational Titles (DOT), whereas the ALJ found her suited to jobs at Reasoning Levels One and Two. *Id*.

It is long settled that an ALJ does not need to incorporate the exact language of a credited medical source opinion, so long as the RFC is consistent with that opinion. *See Stubbs-Danielson v. Astrue*, 539 F.3d 1169, 1174 (9th Cir. 2008) (citing *Howard v. Massanari*, 255 F.3d 577, 582 (8th Cir. 2001). Therefore, the ALJ's failure to use the exact words "simple

instructions" in the RFC is not error, provided the restriction to "simple tasks" sufficiently addresses this limitation.

Plaintiff relies heavily on the phrase "carry out detailed but uninvolved written and oral instructions" contained within the DOT Level Two Reasoning Level description. Pl. Br. at 14-15. Plaintiff argues that the DOT's use of the word "detailed" would preclude her from all Level Two jobs, were her RFC properly formulated. However, this reliance is misplaced as Ninth Circuit caselaw clearly states that there is a difference between the SSA's and the DOT's respective definitions of "detailed":

> The Social Security regulations separate a claimant's ability to understand and remember things and to concentrate into just two categories: "short and simple instructions" and "detailed" or "complex" instructions. 20 C.F.R. § 416.969a(c)(1)(iii) …. The DOT, on the other hand, employs a much more graduated, measured and finely tuned scale starting from the most mundane ("simple one- or two-step instructions" at level one), moving up to the most complex ("applying principles of logical or scientific thinking ... apprehend the most abstruse classes of concepts" at level six). DOT at 1010–1011. To equate the Social Security regulations use of the term "simple" with its use in the DOT would necessarily mean that all jobs with a reasoning level of two or higher are encapsulated within the regulations' use of the word "detail." Such a "blunderbuss" approach is not in keeping with the finely calibrated nature in which the DOT measures a job's simplicity.

*Meissl v. Barnhart*, 403 F. Supp. 2d 981, 983–84 (C.D. Cal. 2005). Indeed, courts within the Ninth Circuit have consistently held that a limitation requiring simple or routine instructions encompasses both Reasoning Levels One and Two. *See Xiong v. Comm'r of Soc. Sec.*, No. 1:09-CV-00398-SMS, 2010 WL 2902508, at *6 (E.D. Cal. July 22, 2010) (collecting cases within the Ninth Circuit affirming a finding that "simple tasks" are consistent with Reasoning Levels One and Two). Therefore, the ALJ's RFC limitation to "simple tasks" sufficiently addresses the Plaintiff's ability to follow simple instructions.

V.

Next, Plaintiff contends the ALJ erred in relying on VE testimony that Plaintiff could perform the job of mailroom clerk, because Plaintiff's RFC limits her to Reasoning Levels One and Two and mailroom clerk is Reasoning Level 3. Pl. Br. at 17-18. Finally, Plaintiff argues that the job numbers provided by the VE were not consistent with job numbers produced by Plaintiff's counsel, despite both parties using Job Browser Pro to generate the report. Pl. Br. at 18.

At step five, the ALJ has the burden to establish not only other jobs a claimant can do, but that those jobs exist in significant numbers in the national or local economy.  20 C.F.R. §§ 404.1566, 416.966.  "Significant numbers" is essentially a composite figure: it does not indicate whether the jobs are *actually* available in a claimant's geographical region (i.e., whether there are actually job openings, or whether the claimant would be hired if they applied).  20 C.F.R. §§ 404.1566(a)-(c), 416.966(a)-(c).  However, there is no bright-line rule concerning the number of jobs.  *See Gutierrez v. Comm'r of Soc. Sec.*, 740 F.3d 519, 528 (9th Cir. 2014) (25, 000 jobs in the national economy presented a close call but is significant) (collecting cases); *see also Randazzo v. Berryhill*, 725 F. App'x 446, 446 (9th Cir. 2017) (rejecting 10,000 as a significant number).

Plaintiff's RFC limits her to performing work at Reasoning Levels One or Two; the job of mailroom clerk is Reasoning Level Three. Tr. 61. The ALJ did not challenge the discrepancy between the RFC limitations and the VE's recommendation. *Id*. Under Ninth Circuit law, the ALJ was required to resolve any such conflict during the administrative hearing. *See Zavalin v. Colvin*, 778 F.3d 842, 847 (9th Cir. 2015). The Commissioner stipulates this was legal error but argues such error was harmless because "the ALJ found Plaintiff could perform the jobs of marking clerk and semi-automatic sewing machine operator, both of which exist in significant

numbers in the national economy." Def. Br. at 15, n. 5. We agree with the Commissioner that

the ALJ's failure to resolve the conflict between Plaintiff's RFC limitations and the VE's

recommendation was harmless error. The operative question at stage five is whether the ALJ

can prove jobs a claimant can do exist in significant numbers in the national or local economy.

20 C.F.R. §§ 404.1566, 416.966.  In this case, the VE proposed two jobs at Reasoning Level

Two: marking clerk, with approximately 311,000 jobs, and semi-automatic sewing machine

operator, with approximately 27,000 jobs. Either of these positions meets the Ninth Circuit

standard for significant numbers of jobs within the national economy. Therefore, the ALJ met

the legal burden of proof as required at step five, and any error including a job with Reasoning

Level Three was harmless.

   Plaintiff's second challenge to the VE testimony fails as well. First, recent Ninth Circuit

precedent forecloses a Plaintiff's ability to challenge a VE's job numbers on appeal if they did

not raise such a challenge during administrative proceedings and are represented by counsel.

*Shaibi v. Berryhill*, 883 F.3d 1102, 1109 (9th Cir. 2017).  During the hearing, Plaintiff's counsel

asked the VE a single question about job numbers: "where do you obtain your numbers for the

jobs that you provide?" Tr. 62. It is unlikely that this question alone qualifies as a challenge to

the VE's numbers.

   Second, even if Plaintiff had raised a challenge during the hearing, under *Wischmann v.*

*Kijakazi*, alternative job numbers are not considered significant or probative if no information

about how the job numbers were produced is provided. *Wischmann v. Kijakazi*, 68 F.4th 498,

507 (9th. Cir. 2023). In this case, Plaintiff's counsel generated conflicting job numbers using

Job Browser Pro, "the same statistical source as the VE." Pl. Br. at 19. However, "Job Browser

Pro software is meant to assist a VE in performing a complex matching exercise of various

sources of information from official and private sources, experience in using the program and interpreting the output would ordinarily be necessary to produce probative results." *Wischmann*, 68 F.4th at 507. Plaintiff does not explain who generated the alternative numbers and if they had requisite expertise in developing job numbers, or if the numbers were generated by someone with "no identified expertise in calculating job figures in the national economy." *Id*. Nor does Plaintiff explain what methodology was used to generate data queries, or even what version of the software program was used. *Id*.; Tr. 367-380. Therefore, Plaintiff provides no basis to conclude the alternative job numbers qualify as significant probative evidence that the ALJ must address. *See Tobeler v. Colvin*, 749 F.3d 830, 834 (9th Cir. 2014) (noting that an ALJ need not discuss evidence that a lay witness is "not competent" to provide).

Finally, even if Plaintiff had provided enough information to conclude the alternative job numbers were significant, such evidence would not be probative because, by Plaintiff's own admission, the job numbers provided in their report still exist in significant numbers in the economy. Pl. Br. 19-20. Plaintiff's counsel's report showed 9,090 mailroom clerk positions, 647 sewing machine operator positions, and 73,738 marking clerk positions in the national economy. Pl. Br. at 18-19. Taking Plaintiff's alternative job numbers at face value, the Ninth Circuit benchmark of 25,000 is exceeded. Therefore, the ALJ did not err in relying on the VE's testimony and remand for further evaluation is not necessary.

## CONCLUSION

The ALJ's decision was supported by substantial evidence and, to the extent the ALJ erred, the error was harmless. The Commissioner's final decision is therefore AFFIRMED.

IT IS SO ORDERED.

14

DATED this 5th day of December, 2023.

                    /s/ Michael McShane
                    Michael J. McShane
                    United States District Judge